

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*



FILED

JUN 24 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### MODESTO DIVISION

|  |  |
|---|---|
| In re | Case No. 10-91936-E-7 |
| WALTER RALPH PINEDA, | |
| Debtor(s). | |

|  |  |
|---|---|
| WALTER RALPH PINEDA, | Adv. Pro. No. 10-9060 |
| Plaintiff(s), | Docket Control No. TMT-2 |
| v. | |
| BANK OF AMERICA, N.A., et al., | |
| Defendant(s). | |

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.

### MEMORANDUM DECISION AND ORDER

In response to the complaint in this adversary proceeding, Defendants filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b), Federal Rules of Civil Procedure, and Rule 7012, Federal Rules of Bankruptcy Procedure.[1]

---

[1]/ The court has reviewed the 28-page complaint with 131 paragraphs of general and specific allegations. The court's decision is to grant the motion to dismiss as to all claims against all defendants, without prejudice and with leave to amend.

**REVIEW OF COMPLAINT**

In his Complaint, the Plaintiff alleges that he owns real property commonly known as 22550 Bennet Road, Sonora, California, 95370, and that Bank of America, N.A. is attempting to foreclose on the Bennet Road Property. ReconTrust Company, NA ("ReconTrust") is alleged to be a subsidiary of Bank of America, N.A. and is acting as the trustee under the deed of trust recorded against the Bennet Road Property. The Plaintiff further alleges that Bank of New York Mellon ("BNY") is a trustee for the GSR Mortgage Loan Trust 2003-9 ("GSR 2003-9"), and Goldman Sachs ("Goldman") is an investment banker who sold certificates for GSR 2003-9. Complaint, ¶ 6.

The Plaintiff filed his First Amended Complaint ("FAC") on February 4, 2011. In considering the Motion to Dismiss, the court has carefully reviewed the FAC to identify the relevant allegations. The FAC appears to proceed on two fronts. The first being events that relate to his borrowing money secured by the real property. The other events relate to the subsequent transfer of the note and various investors purchasing interests in a securitized pool of loans. The dispute begins with a loan obtained by the Plaintiff which is documented by a promissory note ("Note") and a deed of trust "Deed of Trust") recorded against real property commonly known as 22550 Bennett Road, Sonora, California ("Bennett Rd. Property") for a loan obtained from Bank of America, N.A.

The Plaintiff alleges that Bank of America, N.A. is attempting to foreclose on the Bennett Rd. Property due to an alleged default on the Note. ReconTrust Company, N.A. ("ReconTrust") is identified as a subsidiary of Bank of America, N.A. and the person acting as trustee for the foreclosure. Another entity identified as a Bank

of America, N.A. subsidiary, Bank of America Corp. LP ("BAC") is alleged to be asserting rights as the servicer for the Note.

It is alleged that the Plaintiff had a long standing banking relationship with Bank of America, N.A. dating back to 1972.  This bankruptcy relationship included the purchase and improvement of his residence and for a second residence on the Bennett Road Property.  Plaintiff alleges that he achieved a "preferred customer" status with Bank of America, N.A., and believed that Bank of America, N.A. established a fiduciary relationship with the Plaintiff.  FAC ¶ 7.

The Plaintiff then suffered a serious illness which required extensive hospitalization.  This medical condition prevented Plaintiff from meeting his financial obligations, and he requested a loan modification from Bank of America, N.A..  FAC ¶ 8.

In 2008 Plaintiff submitted a request for a home loan modification through the Home Affordability Program ("HAMP").  After one year without an answer to the HAMP application, Plaintiff filed a complaint with the Comptroller of the Currency.  Plaintiff alleges that Bank of America, N.A. denied ever receiving a HAMP application, denied that Plaintiff wanted to stay in his home, and represented to the Office of the Comptroller that the  Note was not sold and that the investor in the Note was Bank of New York Mellon, N.A. ("BNYM").  FAC ¶ 8.

The FAC contains an extensive discussion of the business operations of Goldman Sachs, Inc. ("GS") in the selling of interests in securitized loan portfolios,[2] that other courts have

---

[2]/ The court uses the term "securitized loan portfolio" to identify the business practices of assembling a large number of

3

required the securitized loan portfolio process to be strictly followed for the notes in such portfolios to be enforced, and that the "owner" of the promissory note evidencing the debt had the right to enforce the obligation through foreclosure. The allegations include reference to Bank of America, N.A. staying foreclosures while it addressed the issue of "Robo Signing[3]" of foreclosure documents without verification of the facts. The allegations in the FAC include reference to the Securities and Exchange Commission initiating an investigation of financial institutions, including Bank of America, N.A. and GS.

The FAC also includes a allegation that Bank of America, N.A. would retain "possession" of a Note after it was being included in securitized loan portfolio. Plaintiff assert that such practice violates unidentified provisions of the Securities Exchange Act, California Civil Code § 2739,[4] Section 3-203 of the Uniform

---

home loans into a trust or other entity and then selling fractional beneficial interest in the trust or other entity to investors.

[3]/ "Robo Signing" is commonly identified as a process relating to judicial foreclosures where verified pleadings and declarations were executed and filed with the courts when the persons providing the verification or testimony had no knowledge of the facts stated therein.

[4]/ From reviewing the Opposition, it appears that this reference is a misstatement, and the Plaintiff intends to refer to California Civil Code § 2934a governing substitutions of trustees under deeds of trust.

Commercial Code,[5] and Business and Professions Code § 17200.[6]  It is asserted that the violation of these provisions affests the validity of the Note retained by Bank of America, N.A. as a secured instrument.

## COUNT I - FRAUD

Plaintiff asserts that Bank of America, N.A., GS, Goldman Sachs Mortgage Securities Corporation ("GSSC"), and BNYM failed to provide Plaintiff with an accounting of monthly payments from September 2003 through August 2006.  It is alleged that the payments were diverted to other accounts in GSR 2003-9, which deprived Plaintiff of the reduction of the amount due on the Note. Further, Bank of America BAC, GS, and GSSC refuse to disclose other amounts received through credit default swaps.

Plaintiff alleges that GS acted as an investment banker to solicit investors, and that the funds were used to make loans, including the monies borrowed by Plaintiff for the obligation evidenced by the Note.  After the loan was made to Plaintiff, his account[7] to GS for inclusion in a securitized loan portfolio, with Bank of America, N.A. retaining possession of the Note.  FAC ¶¶ 23 and 24.  Plaintiff further alleges that Bank of America, N.A. and

---

[5]/ California has adopted its version of the Commercial, with Division 3, Section 3302 defining a "holder in due course."  This provision does not govern the general enforceability of instruments.  *See* California Commercial Code §§ 3301, 3305, 3306, 3309 and 3312.

[6]/ California Business and Professions Code § 17200 et. seq. is an act which provides rights and remedies for an unlawful, unfair or fraudulent business act or practice.

[7]/ Plaintiff uses the term "account" without providing any definition or description as to what is meant by that term.

GS entered into a Pooling and Securitization Agreement ("PSA") by which Bank of America, N.A. would obtain loans to be placed in a securitized loan portfolio. Plaintiff alleges that GS would then pay Bank of America, N.A. unidentified "kickbacks" for providing adjustable rate loans for inclusion in the portfolio. On information and belief Plaintiff alleges that Bank of America, N.A. received excessive origination fees of $4,526.00 and $2,326.50 for hazardous insurance paid by Plaintiff as the "kickbacks." It is alleged that these amounts violated the Real Estate Settlement Procedures Act ("RESPA"), specifically identifying Section 6 thereof. FAC ¶¶ 26 and 27.

Plaintiff further asserts that it was not disclosed Plaintiff's monthly payments were credited to other accounts known as "senior tranches" from September 2002 through 2008. This conduct is asserted to violate the Truth in Lending Act (TILA), without reference to a specific provision, and RESPA, specifically identifying Section 6.

Plaintiff alleges that his note and deed of trust identify Bank of America, N.A. as the lender and beneficiary. He contends that this is not accurate, as the loans were originated for use in the securitized loan portfolio. Since the Note was to be used for securitized loan portfolio, Plaintiff asserts the use of his name, signature (presumably on the Note and deed of trust), and creditworthiness violated TILA, RESPA, California Civil Code 1709,[8] and Business and Professions Code § 17200. FAC ¶¶ 30 and 31.

Plaintiff asserts that under a Sales and Servicing Agreement

---

[8]/ California Civil Code § 1709 is the codification of the traditional tort of fraud.

between GS and Bank of America, N.A. grants "recourse" to GS in the event that there is a delinquency in loan payments. Further, under the PSA Bank of America, N.A. has an obligation to make advances for delinquent payments on the loans.

Plaintiff alleges that GS did not comply with the requirements of the PSA to assign all right, title and interest into GSR 2003-9. Because of that, his loan was not transferred into GSR 2003-9 and GSSC was not entitled to receive Plaintiff's payments from 2002 through 2008. Further, Bank of America, N.A. did not deliver the Note to GS as required by Uniform Commercial Code §§ 9-9313-9314.[9] FAC ¶¶ 39-42.

Plaintiff's FAC asserts that the monies generated by the payments on the loans in GSR 2003-9 were further sold. The failure to disclose that others had purchased the right to these monies is alleged to TILA, 15 U.S.C. § 1600 et. seq.,[10] and California Business and Professions §§ 17200 et. seq.

In October of 2009, Plaintiff alleges that he was notified by Bank of America, N.A. that BAC would commence servicing the loan. It is alleged that on January 21, 2010, the Plaintiff made demand on Bank of America, N.A. for verification of the obligation owing on the Note pursuant to 11 U.S.C. § 1692g[11] and RESPA. Plaintiff

---

[9]/California Commercial Code §§ 9313 and 9314 relate to a person taking a security interest in personal property and the perfection of that security interest by taking possession or control of the collateral.

[10]/This appears to be an incorrect citation. Presumably Plaintiff is referencing  § 1601 et. seq., the Truth in Lending Act.

[11]/This reference is to the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et. seq.

asserts that he received what was identified as a partial accounting for the period January 2006 - August 2008. It is alleged that the accounting was incomplete because it did not include payments made by third-parties.

In January 2010, Plaintiff received a notice of default under the deed of trust, which was recorded by ReconTrust. A substitution of trustee under the deed of trust and an assignment of the deed of trust were recorded on February 16, 2010. Plaintiff did not receive notice of either the assignment of the deed of trust (to GRS 2003-9) or substitution of trustee.

Plaintiff alleges that the recording the assignment of the deed of trust to GRS 2003-9 was for the purpose "of conversion of Plaintiff's approximate $300,000 investment towards the purchase and improvements" in the Bennett Road Property. This recording of the assignment of the deed of trust is alleged to violate California Civil Code § 1709 (Fraud). The alleged fraud is Bank of America, N.A. misrepresenting to the County Recorder the Bank's status as beneficiary under the Note. It is contended that Bank of America, N.A. knew this was a misrepresentation, intended to induce Plaintiff into believing that Bank of America, N.A. was the beneficiary, Plaintiff relied on the misrepresentation and make payments to GSR 2003-9, which had no right to receive payments. It is asserted that the damages consist of the lack of reduction on the Note obligation and the millions of dollars received by GSSC from third-parties by "shorting" the GSR 2003-9 certificates.

Plaintiff contends that the 2003 "assignment" to GS (presumably this references the Note)"extinguished" all of Bank of America, N.A.'s contractual rights. Further, this 2010 assignment

of deed of trust will subject Plaintiff to "double financial jeopardy" through claims of numerous and unknown bona fide purchasers.  It is also alleged that the substitution of trustee was backdated by Bank of America, N.A. to match the January 22, 2010 assignment and notice of default.

Count I continues through paragraph 98 of the Complaint repeating the allegations of fraud and misconduct with the transfer of the Note and Deed of Trust after the loan with Plaintiff was closed.  The Plaintiff also contests whether BNYM is the trustee of GSR 2003-9.  Plaintiff alleges that is part of the fraud on Plaintiff and investors in GSR 2003-9.

**COUNT II - BREACH OF CONTRACT**

Plaintiff asserts that the Deed of Trust contains specific requirements for the power of sale, transfer services (Paragraph 20), accounting for third-party payments (Paragraph 11), and procedures for the substitution of a trustee (Paragraph 24). It is contended that Bank of America, N.A. breached this contract by instructing ReconTrust to file a notice of default which states that Bank of America, N.A. is the "present beneficiary" under the Deed of Trust and ReconTrust is the Bank's agent.  This breach was done to convert the $300,000.00 which Plaintiff has invested in the Bennet Road Property.

It is further contended that Bank of America, N.A. and BAC further violated the contract by failing to inform the Plaintiff of transferring servicing to BAC.  Additionally, the contract was breached by Bank of America, N.A. failing to account for "third party payments in 'excess' of the security interest in an attempt to cover the millions of dollars Defendant [Bank of America, N.A.]

and Defendant GSSC received by third party payments including credit default swaps."   FAC ¶ 104.

Plaintiff asserts that he has been damaged because Bank of America, N.A.'s and GSSC conduct resulted in a "60% loss in property value and the highest rate of unemployment since the Great Depression."   Plaintiff also believes he is entitled to punitive damages because Bank of America, N.A.'s breach of contract also breached the covenant of good faith.   Further, the violations of RESPA and TILA give rise to defense and recoupment or $220,000 of loan payments made by Plaintiff.

**COUNT III – UNJUST ENRICHMENT**

Because GSSC received the monthly payments on the Note from August 2003 through August 2008 illegally it has been unjustly enriched.   Further, GSSC's conduct in "shorting" GSR 2003-9 tranches "resulted in millions of dollars of profits and [unjust enrichment] as a result of fraud and deceit perpetrated on Plaintiff and the investors of [SGR 2003-9] trust."

**COUNT IV - DECLARATORY RELIEF**

Plaintiff seeks a declaration of the respective rights of the Plaintiff, Bank of America, N.A., SG, GSSC, BNY, and ReconTrust in the Note and Deed of Trust.   The correct party who owns the Note and has the right to foreclose under the Deed of Trust must be determined.

**PRAYER FOR RELIEF**

By this FAC, the Plaintiff seeks a determination that the obligation owing on the Note is dischargeable in this bankruptcy case.   Further, a determination that GSR 2003-9 unlawfully received the mortgage payments for the period from August 2002 through

August 2008, and that Plaintiff is entitled to recover those payments.  Further, that the lien held by GSR 2003-9 is void and unenforceable.  Additionally, that GSSC, GS, and all other Defendants be ordered to pay all ill gotten gain to Plaintiff and investors who were deceived.  Further monetary damages of $300,000.00 for general damages, $400,000.00 in special damages, and an unstated amount of punitive damages.  Plaintiff wants a judgment for an accounting fo all monies paid by Plaintiff and others, including from credit default swaps.  Finally, a determination that the substitution of trustee and notice of default were invalid.

### RULING ON MOTION TO DISMISS

All of the Defendants have joined in filing a Motion to Dismiss.  The Motion pleads with particularity 12 ground for the dismissal of the FAC.  These grounds will be addressed in the order stated in the Motion, with the court's ruling on each ground.

In considering a motion to dismiss, the court starts with the basic premise that the law favors disputes being decided on their merits, and a complaint should not be dismissed unless it appears beyond doubt that the Plaintiff-Debtor can prove no set of facts in support of his claim which would entitle him to the relief. *Williams v. Gorton*, 529 F.2d 668, 672 (9th Cir. 1976).  Any doubt with respect to whether a motion to dismiss will be granted should be resolved in favor of the plaintiff.  *Pond v. Gen. Electric Co.*, 256 F.2d 824, 826-27 (9th Cir. 1958).  For purposes of determining the propriety of a dismissal before trial, allegations in the complaint are taken as true.  *Kossick v. United Fruit Co.*, 365 U.S. 731, 732 (1961).

The complaint must provide more than labels and conclusions, or a formulaic recitation of a cause of action; it must plead factual allegations sufficient to raise more than a speculative right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Federal Rule of Civil Procedure 8, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7008, requires that complaints contain a short, plain statement of the claim showing entitlement to relief and a demand for the relief requested. Fed. R. Civ. P. 8(a). As the Court held in *Bell Atlantic*, the pleading standard under Rule 8 does not require "detailed factual allegations," but it does demand more than an unadorned accusation or conclusion of a cause of action. *Bell Atlantic*, 550 U.S. at 555.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009) (citations and quotation marks omitted). Rule 8 also requires that allegations be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

In ruling on a 12(b)(6) motion to dismiss, the Court may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court need not accept unreasonable inferences or conclusory deductions of fact cast in the form of factual allegations. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor is the

1  court required to "accept legal conclusions cast in the form of
2  factual allegations if those conclusions cannot be reasonably drawn
3  from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d
4  752, 754-55 (9th Cir. 1994).

5      Though the court takes into account that the Plaintiff is
6  electing to represent himself and gives him leeway with respect to
7  his pleadings and use of legal terminology, the court cannot
8  attempt to construct his arguments or allegations.  The court will
9  also not presume allegations omitted are "facts" in the Plaintiff's
10  favor.

11      In reviewing the FAC, the court first notes that it suffers
12  from an inconsistent duality.  While a party may plead inconsistent
13  theories, the FAC suffers from inconsistent facts.  A portion of
14  the FAC is premised on Bank of America, N.A. having all of its
15  rights extinguished by the transfer of the Note.  Other allegations
16  are that Bank of America, N.A. never effectively transferred the
17  Note.  In part of the FAC improper acts have occurred because the
18  Note was in a securitized loan portfolio, which in other parts
19  there was no transfer to the portfolio.[12]

20  _____

21  [12]/ In the zeal of filing a complaint, plaintiffs often feel
    compelled to plead and state everything they can think of in
22  arguing their case.  The complaint is the document in which the
    plaintiff pleads plausible claims, not the time to try and prove
23  his case.  If the Plaintiff decides that filing an amended
    complaint is appropriate, he may well wish to focus his
24  allegations on his rights, his claims, and conduct of the
    defendants against the plaintiff and his rights.  From what the
25  court understands from the FAC now before it, the Plaintiff
    borrowed money from Bank of America, N.A. and provided Bank of
26  America, N.A. with a deed of trust to secure the repayment of the
    monies.  Plaintiff was not the purchaser of negotiable
27  instruments from Bank of America, N.A., an investor in any trust
    set into which were transferred Bank of America, N.A. promissory
28  notes, or engaged in any default swap transactions.

1    The Plaintiff, as evidenced in the prayer, also appears to
2    have fallen into the illogical trap that he is entitled to a second
3    residence for free because of what third-parties did with, and to,
4    each other.  With limited exception, all of the conduct of the
5    Defendants complained about arose after the Plaintiff obtained the
6    monies he wanted from Bank of America, N.A. through the loan.
7    Though the Plaintiff received everything he was entitled to receive
8    from the loan (the money), Plaintiff believes that because of
9    subsequent financial transaction involving the Note (a negotiable
10   instrument which is freely transferable under the Commercial Codes
11   enacted by the States) were entered into by Bank of America, N.A.
12   and others, any obligation of Plaintiff on the Note were
13   extinguished.  The FAC does not allege any claims or grounds by
14   which the Note, the negotiable instrument, has been destroyed.[13]

15       The court also notes that the FAC also suffers from a common
16   drafting trap of if more can be said, then it must be significant.
17   This leads to the FAC not making allegations about the Defendant,
18   but the financial community in general.  The FAC contains extensive
19   references to Senate Finance Committee investigations, "Burger King
20   Kids," charges of misrepresentations to investors in securitized
21   loan portfolios, and "Robo Signers."  What the Plaintiff misses in
22   including all of these broad discussions and allegations is the
23   specifics of what was done to this plaintiff.

24       Though sought in the prayer, Plaintiff does not assert a claim
25   _____

26       [13]/ The Plaintiff has not provided the court with any legal
     authority for the proposition that post-loan business
27   transactions between Bank of America, N.A. and third-parties for
     the transfer and negotiation of the Note renders the Plaintiff's
28   obligation to pay the Note invalid or unenforceable.

or allege grounds by which the Deed of Trust, an interest in property, has been destroyed.    Property rights are not lightly treated under the law, and such rights are not easily destroyed. In California, the security is not severed from the underlying obligation merely by the transfer of the note.  "The note and the mortgage are inseparable; the former as essential, the later as an incident.  An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." *Carpenter v. Longan*, 83 U.S. 271, 274 (1872); *accord Henley v. Hotaling*, 41 Cal. 22, 28 (1871); *Seidell v. Tuxedo Land Co.*, 216 Cal. 165, 170 (1932); Cal. Civ. Code §2936.  Therefore, if on party receives the note an another receives the deed of trust, the holder of the note prevails regardless of the order in which the interests were transferred. *Adler v. Sargent*, 109 Cal. 42, 49-50 (1895).

Conspicuously missing from the FAC are any allegations that the Plaintiff has made all payments due on the Note and no default exists.  Rather, from the allegations in the FAC, the court infers that due to the Plaintiff's illness he fell into default on the Note and sought the HAMP restructure. The Plaintiff's inability to have income to pay the monthly amounts due on the Note were exacerbated by the fall in real estate values, precluding him from refinancing the loan.  Not an uncommon story.

The FAC contains extensive discussion of relating to the investment in mortgage portfolios and various financial transactions, including "default swaps."  The Plaintiff contends that the financial transaction that Bank of America, N.A. and others entered into with the Note inure to the Plaintiff's benefit. The Plaintiff offers no allegations as to how or why, after he has

received everything he is entitled to (the loan proceeds) for the Note (negotiable instrument) he gave to Bank of America, N.A., the Plaintiff is entitled to a passive participation in the financial transaction involving the negotiable instrument.

The FAC also contains an interesting contention that lenders cause a 60% drop in the value of the Plaintiff's property.  Some contend that real estate values were artificially inflated, and that an "irrational exuberance" existed concerning the ever increasing real estate sales prices.  The run-up in real estate prices in the first half of the 2000's is reminiscent of the rapid increase in real estate sales prices in the 1980's, fuel by the Savings and Loan lending practices.  The seemingly never ending increase in real estate prices came crashing down in the early 1990's, leaving many home owners with mortgages significantly in excess of the price that a willing seller would pay once the freewheeling lending practices ceased.

### STANDING

The Defendants first attack the FAC on the basic issue of standing.  Standing is a Constitutional standard which requires there to be an actual case or controversy between the parties.

> Article III of the Constitution confines federal courts to decisions of "Cases" or "Controversies."  Standing to sue or defend is an aspect of the case-or-controversy requirement. (Citations omitted.)  To qualify as a party with standing to litigate, a person must show, first and foremost, "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent.' (Citations omitted.)...Standing to defend on appeal in the place of an original defendant, no less than standing to sue, demands that the litigant possess 'a direct state in the outcome.' (Citations omitted.)

<u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 64, 117 S.Ct. 1055 (1997).

1   Defendants assert that when the Plaintiff filed this Chapter 7
2   case the Bankruptcy Code created the bankruptcy estate which
3   includes all of the claims at issue in this Adversary Proceeding.
4   11 U.S.C. § 541(a).  In a Chapter 7 case, the Chapter 7 Trustee
5   alone has the ability to sue on behalf of the bankruptcy estate.
6   *Estate of Spirtos v. One San Bernardino County Superior Court Case*
7   *Numbered SPR 02211 (In re Estate of Spirtos)*, 443 F.3d 1172, 1176
8   (9th Cir. 2006); 11 U.S.C. § 323(b).  As one court stated,

> [A]ny unliquidated lawsuits initiated by a debtor
> prepetition (or that could have been initiated by the
> debtor prepetition) become part of the bankruptcy estate
> subject to the sole direction and control of the trustee,
> unless exempted or abandoned or otherwise revested in the
> debtor.  The debtor lacks standing in a chapter 7 case to
> prosecute claims that are property of the estate.

*In re Bailey*, 306 B.R. 391, 392-93 (Bankr. D.D.C. 2004) (citations omitted).

The Plaintiff responds that he communicated with the Chapter 7 Trustee at the First Meeting of Creditors.  The Plaintiff asserts that the Chapter 7 Trustee believes that Plaintiff can assert the claims in this case.  In the file for the Chapter 7 case, the Trustee has filed a Report of No Distribution.  Dckt. 28, filed on August 21, 2010.  However, the Plaintiff did not file an Amended Schedule B listing this claim as an assert until November 30, 2010. Dckt. 33.  The Trustee has taken no action since November 30, 2010, to modify the Report of No Distribution.  Additionally, the Plaintiff disclosed the existence of these claim on the original Schedule C (though the basis for the exemption was not stated) filed in this case, which predated the Report of No Distribution by two and one-half months.

In his Amended Schedule C Plaintiff exempted the claims

pursuant to California Code of Civil Procedure § 703.140(b)(11)(d). (*See* Schedule C, No. 10-91936 Dckt. 16; Amended Schedule B and C, No. 10-91936 Dckt. 33.)  While an exemption does not remove the asset from the bankruptcy estate, the Plaintiff has rights in these claims.  The Plaintiff must address with the Trustee whether all of the claims will be abandoned by the Trustee or if there is a litigation agreement for the Plaintiff to prosecute the entire action.

Further, Fed. R. Civ. P. 17(a)(3) and Fed. R. Bankr. P. 7017 provides for a real party in interest to substitute into a case, ratify, or join an action.  This includes a debtor obtaining either the participation or authorization of the trustee to prosecute the action, or an abandonment of the rights that are the subject of the action.  The court notes that the Debtor has not taken any action, as reflected on the court's docket, to obtain either an abandonment of these rights from the trustee or the joinder of the trustee in this adversary proceeding.  While not fatally defective at this juncture, it is an indication that this adversary proceeding will not be properly prosecuted and likely be dismissed if the matter is not promptly addressed by the Debtor.

The Motion to Dismiss for lack of standing is denied without prejudice.

### EXTINGUISHMENT OF RIGHTS IN BANK OF AMERICA, N.A.

A significant contention in the FAC is that the transfer of the Note to GSR 2003-9 extinguished all rights of Bank of America, N.A..  The Plaintiff's opposition does not state how the transfer terminated such rights, though the court interprets the argument to be that Bank of America, N.A. "transferred" its rights as payee.

However, that does not mean that Bank of America, N.A. does not have any rights. In this case, Bank of America, N.A. states in the Points and Authorities to the Motion that it is alleged by Plaintiff that Bank of America, N.A. continues to have rights by virtue of the PSA, in which Bank of America, N.A. identifies as the servicer of the loan. The court does not determine what rights the Bank may or may not have in the context of the present motion. Rather, the court determines whether this Plaintiff has been able to state a plausible claim.

Exhibit 8 to the Complaint is a copy of the substitution of trustee and assignment of deed of trust dated January 22, 2010, which was recorded on February 9, 2010. This document states that Bank of America, N.A., the original payee and beneficiary, is identified as the "beneficiary" as the servicer for GSR 2003-9. The deed of trust follows the note, and if the Note has been transferred to GSR 2003-9 (legally, it would be transferred to the trustee for GSR 2003-9), then GSR 2003-9 has the beneficial interest in the deed of trust. Arguably, the Substitution of Trustee and Assignment of Deed of Trust does not precisely name the parties, it is consistent with the asserted transaction. GSR 2003-9 can elect to act through agents, such as a loan servicer, to take actions such as foreclosures. *See Baisa v. Indymac Fed. Bank*, No CIV-09-1464 WBS JMR, 2009 WL 3756682, *3 (E.D. Cal. Nov. 6, 2009) ("MERS had the right to assign its beneficial interest to a third party"); *Weingartner v. Chase Home Finance, LLC*, 702 F. Supp. 2d 1276, 1280 (D. Nev. 2010), "Courts often hold that MERS does not have standing as a beneficiary because it is not one, regardless of what a deed of trust says, but that it *does have standing as an*

*agent of the beneficiary* where it is the nominee of the lender (who is the 'true' beneficiary." Emphasis added.

As stated above, the Plaintiff has taken alternative factual allegations as to Bank of America, N.A. having transferred the note, not transferred the note, and transferred the note but continued to service the Note through its subsidiary BAC Home Loans Servicing, LP.   Exhbit 7, April 21, 2010 letter by Plaintiff to Bank of New York Mellon. But see Paragraph 55 of the FAC alleging that all of Bank of America, N.A.'s contracutal rights have been "extinguished."

The Plaintiff fails to state a plausible claim that Bank of America, N.A. has no right to enforce the deed of trust which secures the Note.   The possibility that the monies owed on the Note to be paid for by the collateral (the Bennett Road Property) may go to the principal of the Bank (GSR 2003-9) does not preclude Bank of America, N.A. from fulfilling obligations as the servicer.

### FRAUD IN CONNECTION WITH THE SALE OF THE RESIDENCE (WRONGFUL FORECLOSURE)

A plaintiff cannot challenge a foreclosure proceeding (whether it is pending or has already occurred) without first credibly alleging tender.   *Karlsen v. American Savings and Loan Assoc.*, 15 Cal. App. 3d 112, 117-18 (1971); *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal. App. 3d 1018, 1021 (1989). A valid and viable offer of tender means that it is made in good faith, the party making the tender has the ability to perform, and the tender is unconditional. *See* MILLER & STARR, CALIFORNIA REAL ESTATE, §§ 1493-1495 (3d ed. 1989).   A failure to allege such tender makes the claim deficient on its face. *Alicea v. GE Money Bank*, 2009 WL

2136969 (N.D. Cal. 2009).   However, the requirement of tender may be waived.   *Standley v. KNAPB*, 113 Cal.App. 91, 102 (1031); *Humboldt sav. Bank v. McCleverty*, 161 Cal. 285, 291 (1911); and MILLER & STARR, CALIFORNIA REAL ESTATE, § 10:212 (3d ed.)

The FAC is clear on its face that there has been and is no tender being made to cure any the default in the payments due on the Note.    The Plaintiff instead has attempted to obtain a modification of the Note, and is looking to have part of the debt forgiven, reducing the amount to be paid to the present value of the property.   Plaintiff further alleges that Defendants never considered his loan modification, and lied to the Comptroller of Currency about his loan modification request.   Proposing a loan modification (and promising to pay based on receiving a modification) is not the same thing as promising to pay what is actually owed on the note.

But as discussed in the following section on fraud in general, the Plaintiff does not allege what fraud Bank of America, N.A. and the other Defendants have committed as to the Plaintiff.   Rather, the Plaintiff pleads that he disputes that Bank of America, N.A. had the right and authority to enforce the deed of trust which secures the Note.   Merely because there is a dispute over certain rights does not mean that fraud has been committed. It is common for parties to disagreement, and such disagreement is often necessary for there ever to be a lawsuit.

Plaintiff has not alleged tender in this case, has not alleged grounds by which tender should be waived, and fails to allege grounds by which the Note is not enforceable.   The Complaint is deficient on its face and must be dismissed without prejudice.

The motion to dismiss is granted, without prejudice and with leave to amend.

### FRAUD AND THE UCL

Plaintiffs also claims that the Defendants committed fraud in relation to his loan. The Ninth Circuit Court of Appeals interprets Federal Rule of Federal Procedure 9(b), as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7009, to require that the complaint (1) specify the fraudulent representations; (2) specify the representations were false when made; (3) identify the speaker; (4) state when and where the statements were made; and (5) state the manner in which the representations were false and misleading. *Decker v. GlenFed Inc., (In re Glenfed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1547 n.7 (9th Cir. 1994) (en banc), superseded by statute on other grounds as stated in *In re Silicon Graphics, Inc.*, 970 F. Supp. 746, 754 (N.D. Cal. 1997); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991); *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). This is consistent with common law fraud in California. *Seeger v. Odell*, 18 C.2d 409 (1941), and *Manderville v. PCG&S Group*, 146 Cal.App.4th 1486 (2007). Merely because a dispute exists between the parties does not support a claim for fraud. The Plaintiff must at least plead more to survive a motion to dismiss.

A fraud claim is subject to the additional pleading requirements of Fed. R. Civ. P. 8(b) and Fed. R. Bankr. P. 7008. The Plaintiff may not merely recite the statutory elements for fraud, but must plead a plauible case based on the alleged facts in this case.

This Plaintiff first alleges that Defendants committed fraud in securitizing his note. It is contended, without support, that any potential subsequent sale or transfer of the Note (an instrument, and likely a negotiable instrument) must have been first disclosed to the Plaintiff prior to his borrowing the money from Bank of America, N.A.. No legal basis for this contention has been presented to the court. In response to this allegation, Bank of America, N.A. directs the court to paragraph 20 of the deed of trust, which the Defendants have included as an exhibit, but has not been included as part of the FAC. While the Bank is correct that this paragraph discloses that the Note may be transferred, it is buried in a number of dense, legalistic paragraphs separate and apart from the Note or the loan documents.

More significant to the court is that the Debtor never alleges that he intended to be part of a further transaction concerning the potential sale or transfer of the Note. The only transaction between the Plaintiff and Bank of America, N.A. was the Plaintiff obtaining loan proceed from the Bank. The Debtor obtained a loan and had set terms by which he had to repay the obligation. Irrespective of what further transactions occurred with the Note, the Plaintiff's obligations and rights would did not change.

Plaintiff further alleges that this securitization somehow stripped off the security interest. As to the first allegation, Plaintiff fails to state how having his note sold or transferred to the GSR-09 trust caused him any harm or what fraud was committed to this Plaintiff. If there is no harm, there is no relief that the court can grant. It is not alleged that any of the Plaintiff's rights and obligations under the Note were altered.

As to the second contention, there has been no legal authority presented to the court for proposition that securitizing a note somehow strips off the security interest.  It settled law that a promissory note and its security interest are inseparable; an assignment of the note carries the security interest with it. *Henley v. Hotaling*, 41 Cal. 22, 28 (1871); *Seidell v. Tuxedo Land Co.*, 216 Cal. 165, 170, 13 P.2d 686 (1932); *accord Carpenter v. Longan*, 83 U.S. 271, 274 (1872); *see also* Cal. Civ. Code § 2936 (West 2010).  So, as to these claims, the Motion to Dismiss is granted without prejudice.

Plaintiff also claims fraud in relation to the UCL.  The UCL prohibits unlawful, unfair, and fraudulent business practices. Cal. Bus. & Prof. Code § 17200 *et. seq.*  While Plaintiff goes into great detail about what he believes are the fraudulent business practices of Defendants, he falls to allege both how they could have cause and that they did cause any actual injury he suffered as a result. The Plaintiff can seek to recover that person interest in money or property which he lost due to the unfair competition.  *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010).  The 2004 amendments to the UCL specifically require that the Plaintiff have suffered an actual injury.  California Business and Professions Code § 17204, *Kwikset Corp. V. Superior Court*, 51 Cal. 4th 310 (2011). The allegations in the FAC does not relate to conduct of the Defendants as to the Plaintiff in his transaction, but what subsequently occurred between the Defendants and other persons.

As such, Plaintiff's claims under the UCL are dismissed without prejudice and with leave to amend.

///

24

**RESPA**

Plaintiff also alleges violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e). RESPA creates a series of rights and obligations as between borrowers, lenders, and loan servicers, including an obligation for loan servicers to respond to borrower inquiries. The servicer is then supposed to correct any errors, provide information as to why the account information is not in error, or explain why the information requested is unavailable. 12 U.S.C. § 2605(e)(2).

According to plaintiff, on January 21, 2010, Plaintiff received a "Debt Verification" letter pursuant to 15 U.S.C. 1692(g). This obligation arises when a debt collector (someone other than the original creditor if the obligation was obtained after it went into default, 15 U.S.C. § 1692(g), is attempting to collect a debt. This provision requires that, upon written request, for the collector to verify the obligation for the debtor. However, a verification does not mean that the debt is proven to the satisfaction of the debtor, but that the collector reasonably confirm the obligation from the creditor. *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1174 (9th Cir. 2006).

Plaintiff believed it incorrectly stated the amount he owed, so he requested an accounting pursuant to 12 U.S.C. § 2605. (Amd. Compl. ¶ 47.)[14]  One reason for the requested accounting is that

---

[14]/ Though early in the pleading stage of this case, the Plaintiff has not provided any indication of how he believes the payments were misapplied or the correct computation of this debt based on the payments the Plaintiff made on the loan.  Rather, it appears that the "misapplication" of payments is based on a contention that third-party events relating to the "securitization of the note," default swaps, and other transactions should inure to Plaintiff's benefit and repay his

Plaintiff believed that third-party payments were being incorrectly applied. (Amd. Compl. ¶ 42.) These third-party payments included the default swaps, traunch sales, sales of certificates in GSR 2003-9, and TARP monies. For unstated reasons, Plaintiff asserts that post loan closing sales and transfers of the Note inure to his benefit.

Defendants counter that Plaintiff failed to state a claim under RESPA because what he filed was not a qualified written request. However, as mentioned, Plaintiff alleges that he did submit a qualified written report. (Amd. Compl. ¶ 47.) For purposes of determining the propriety of a dismissal before trial, allegations in the complaint are taken as true. *Kossick v. United Fruit Co.*, 365 U.S. 731, 731 (1961). Taking Plaintiffs allegation as true, he did file a qualified written report. But this does not determine the ruling on this part of the motion.

Defendants contend that even if the Plaintiff alleges having made a qualified written request's RESPA claim is deficient because Plaintiff failed to allege any actual harm. *Pok v. Am. Home Mortg. Servicing, Inc.*, 2010 U.S. Dist. LEXIS 9016 (E.D. Cal. 2010). From the pleadings, it is difficult to tell what harm, if any, Plaintiff suffered as a result of not getting the full accounting. In fact, it appears that the only harm asserted is that the Plaintiff does not get to participate in the post loan closing transactions involving the Note. Having shown no right to participate in the post loan closing transactions involving the Note, Plaintiff has not alleged damages, if any, from an alleged violation of this RESPA provision.

---

obligation for the monies he borrowed.

As such, Plaintiff's RESPA claims are dismissed without prejudice and with leave to amend.

### TILA

Plaintiff next alleges that Defendants violated the Federal Truth in Lending Act (TILA) by failing to disclose the Pooling and Securitization Agreement (PSA) and its surrounding circumstances. Plaintiff seeks recession and damages. However, Plaintiff entered into the contract on August 13, 2002, which is when the alleged violation occurred. TILA has a statute of limitations for rescinding contracts, which runs for three years from the date of the transaction. 15 U.S.C. § 1635(f). As the transaction date was August 13, 2002 (over eight years before the filing of this adversary proceeding), the statute of limitations has run as to the recision claim. TILA also has a statute of limitations for damages, which runs one year from the date of the occurrence of the violation. 15 U.S.C. § 1640(e). As the date of the violation was August 13, 2002, the statute of limitations has also run as to the damages claim.

Further, Plaintiff fails to allege how the failure to disclose the PSA violated Plaintiff's rights under TILA. Nothing has been alleged by the Plaintiff concerning the terms of his loan. Rather, he merely asserts that he should have been told of the intended future financial transactions of Bank of America, N.A. and others concerning the negotiation and transfer of the Note. No basis has been provided to the court for such a contention.[15]

---

[15]/ Plaintiff's contention that he should be allowed to participate in and benefit from the Note being negotiate in the future raises significant issues for borrowers. Participation swings two ways, both to the benefit and detriment of the

For both of the independent grounds of (1) the statute of limitation have expired, and (2) no actual damages having been alleged, no plausible TILA claims have been pled.  The TILA claims are dismissed without prejudice and with leave to amend.

### CLAIMS UNDER CALIFORNIA CIVIL CODE § 2934

Plaintiff alleges that California Civil Code § 2934 requires notice to the trustor upon substitution of the trustee.  However, Section 2934 merely states that when an assignment is recorded it serves as constructive notice of its contents.  Section 2934 does not create a cognizable claim for the failure to record a document. Though Plaintiff also asserts that California Civil Code § 2924 has been violated by Bank of America, N.A. he fails to plead a plausible claim for recovery under § 2934 or § 2924.

Plaintiff's claim for relief under 2934 is dismissed with out prejudice and with leave to amend.

### BREACH OF CONTRACT

Plaintiff alleges that Defendants breached their contract by instructing Reconstruct to file a notice of default.  The standard elements for a breach of contract claim are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171 (2008).

It is alleged in the FAC that the contract was breached by

---

participants.  Plaintiff has not contended that he was a participant in the future transaction for both the gain and loss. From the FAC it appears that Plaintiff is seeking to stake out a position that the financial system takes risks and invests its monies to derive a benefit solely for the Plaintiff.

failing to comply with the contractual provisions by (1) instructing ReconTrust to file a notice of default identifying Bank of America, N.A. as a beneficiary and (2) having ReconTrust identify itself as the agent for the beneficiary.

Plaintiff's claim fails on several grounds.  If taken as true that the Note had been conveyed, thereby taking the deed of trust with it, then there were no contractual rights to enforce.  Bank of America, N.A. cannot "breach" a contract in which it no longer has any obligation to perform.  Conversely, if there was still a contract between the Plaintiff and Bank of America, N.A. the alleged default (improperly proceeding with a foreclosure) did not exist.  Plaintiff pleads that he defaulted on the Note due to his illness and sought a loan modification.

Plaintiff's claim also fails on its face because of the second element.  Plaintiff must plead his performance or excuse for nonperformance.  Here, Plaintiff failed to perform — he stopped paying on the note — and his complaint has provided no reason why he his nonperformance should be excused.  The court cannot draw the reasonable inference that the defendant is liable for the misconduct alleged, *Twombly*, 550 U.S. at 556, if Plaintiff has not pled why his lack of performance is excused.

Further, Plaintiff has not pled any damages flowing from the alleged breach of contract.  If no contract exists, then no foreclosure occurs.  If the contract exists, then Plaintiff has not pled any damages Plaintiff's claim for breach of contract is dismissed without prejudice and with leave to amend.

### UNJUST ENRICHMENT

Plaintiff claims that Defendants made millions in shorting

GSR-09 and should have to disgorge those profits. Besides the fact that Plaintiff gives no reason why he is entitled to the alleged ill-gotten gains, unjust enrichment is a "general principle, underlying various legal doctrines and remedies, rather than a remedy itself." *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779 (2003) (internal citations ommitted).

As Plaintiff has failed to state a cause of action in regards to the disgorgement of the "ill-gotten" gains, this claim is dismissed without prejudice and with leave to amend.

## DECLARATORY RELIEF

Finally, Plaintiff alleges that multiple parties have claimed ownership of his note. Plaintiff seeks declaratory relief to determine which party actually holds the note and is entitled to payments.

Declaratory relief is an equitable remedy distinctive in that it allows adjudication of rights and obligations on disputes regardless of whether claims for damages or injunction have arisen. "In effect, it brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981). The party seeking declaratory relief must show (1) an actual controversy and (2) a matter within federal court subject matter jurisdiction. *Calderon v. Ashmus*, 523 U.S. 740, 744 (1998). There is an implicit requirement that the actual controversy relate to a claim upon which relief can be granted. *Earnest v. Lowentritt*, 690 F.2d 1198, 1203 (5th Cir. 1982).

The court may only grant declaratory relief where there is an actual controversy within its jurisdiction. *Am. States Ins. Co. v.*

30

*Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).  The controversy must be definite and concrete. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).

Taking Plaintiff's facts as true, he may be entitled to a determination of to whom he is obligated to pay in satisfaction of the claim on his property.  However, the court cannot determine which Defendants, if any, are actually asserting interests in the note and deed of trust and which are persons that the Plaintiff is asserting may claim an interest in the note and deed of trust. Given the other uncertain pleadings in the Complaint, the court determines the declaratory relief cause of action fails to plead a plausible claim.    If  the  Plaintiff  believes  that  a  proper declaratory relief claim exists, he can include it in a second amended complaint.

The  claim  for  declaratory  relief  is  dismissed  without prejudice and with leave to amend.

### JURISDICTION FOR ADVERSARY PROCEEDING

Jurisdiction for this Adversary Proceeding exists pursuant to 28 U.S.C. § 1334 and the referral to this bankruptcy court pursuant to 28 U.S.C. § 157.  This court is authorized to consider whether, in the interests of justice or comity with state courts, from abstaining  to  hearing  a  proceeding  related  to  a  case  under Title 11.  28 U.S.C. § 1334(c)(1).  Abstention may be raised by the court *sua sponte* or on motion of a party.    *Smith v. Wall Mart Stores*, 305 F.Supp.2d 652 (SD MISS 2003).

The Plaintiff's Chapter 7 bankruptcy case was filed on May 20, 2010.  The Chapter 7 Trustee filed a Report of No Distribution on August 21, 2010. Dckt.28.  On September 7, 2010, the Plaintiff

31

1   obtained his discharge.   The discharge terminated the automatic
2   stay as to the Plaintiff and property of the Plaintiff, but not
3   property of the bankruptcy estate.   11 U.S.C. § 362(c)(2)(C).   It
4   wasn't until almost three months after the discharge was entered
5   that the Plaintiff amended his Schedule B to list the claims in
6   this lawsuit as an asset and claim them as exempt.   Dckt. 33.   No
7   proof of service of the amendments to Schedules B and C have been
8   filed by the Plaintiff.   There is no evidence in the record to show
9   that the Chapter 7 Trustee is aware of this asset.

10       In the months that have passed the Chapter 7 trustee has not
11  asserted any interest in the claims in this adversary proceeding.
12  The Plaintiff represents that he has discussed the claims with the
13  trustee, but no appearance has been made by the trustee, nor has
14  there been an abandonment of the claims.

15       The Plaintiff has chosen to proceed in a Chapter 7 case and
16  immediately discharge his debts, rather than consummate a plan of
17  reorganization and make provisions for some payments to creditors.
18  This litigation has no bearing on the treatment of creditors,
19  payment of claims, or administration of property of the bankruptcy
20  estate.   There appears to be no connection or reason for this
21  adversary proceeding to be before this court other than it is a
22  remnant of the completed Chapter 7 proceeding.

23       If the Plaintiff elects to file a second amended complaint, he
24  must be cognizant of this jurisdictional issue and be prepared to
25  address why this court should not abstain from hearing this
26  adversary proceeding.   No Bankruptcy Code issues appear to remain
27  in this case, nor any assets to be administered by the trustee or
28  the Plaintiff through any plan.

**RULING**

The motion to dismiss is granted and the case is dismissed without prejudice with respect each and every claim stated therein against each and every Defendant.   The dismissal is without prejudice and with leave to amend.

This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 7052.   The court shall issue a separate order consistent with this ruling.

Dated: June 23, 2011

RONALD H. SARGIS, Judge
United States Bankruptcy Court

This document does not constitute a certificate of service.  The parties listed below will be served a separate copy of the attached document(s).

Walter Pineda
22550 Bennett Rd
Sonora, CA 95370

Tracy Talbot
2 Embarcadero Center #1410
San Francisco, CA 94111

Wayne Rash
1231 E Dyer Rd #100
Santa Ana, CA 92705

Gary Farrar
PO Box 576097
Modesto, CA 95357

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street , Room 7-500
Sacramento, CA 95814